UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURA K. FOSTER and<br>WILLIAM J. FOSTER,<br><br>               Plaintiff,<br><br>               v.<br><br>LOCAL UNION 8A-28A METAL<br>REFINISHERS, PAINTERS, SIGN &<br>DISPLAY, EQUIPMENT & AUTOMOTIVE<br>PAINTERS and ALLIED TRADES, OF THE<br>INTERNATIONAL UNION OF PAINTERS<br>AND ALLIED TRADES; PAINTERS<br>DISTRICT COUNCIL #14 OF THE<br>INTERNATIONAL UNION OF PAINTERS<br>AND ALLIED TRADES (of Chicago,<br>and Cook, Lake, Grundy, and Will<br>counties); THE INTERNATIONAL UNION<br>OF PAINTERS AND ALLIED TRADES;<br>STUART-DEAN CO. INC., a New York<br>corporation; UNKNOWN ENTITIES,<br>similarly situated to Stuart-Dean Co., Inc.;<br>HECTOR LOPEZ, individually;<br>ALVIN McNEAL, individually;<br>ROBERT GIERUT, individually;<br>JOSEPH RINEHART, individually; and<br>JOHN DOES 1-100, individually,<br><br>               Defendants. | No. 16 C 4174<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Laura Foster and her brother William Foster, are engaged in a long-running dispute with their union, Defendant Local Union 8A-28A of the International Union of Painters and Allied Trades (hereafter "Local 8A"). The dispute involves what the Fosters believe to be corruption among union leaders and the resulting failure of the union to represent its members' interests effectively. During the late 2000s, the Fosters had some success challenging the union's leadership through electoral means. But their successes were short lived. Since 2008, they claim to have been targeted by a far-reaching conspiracy to punish them for their activism.

This lawsuit, alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and numerous provisions of Illinois state law, is the latest in a series of attempts by the Fosters to fight back against the alleged conspiracy.[1] In September 2017, the court dismissed Plaintiffs' RICO claim as time-barred and ordered Plaintiffs to show cause why it should not relinquish supplemental jurisdiction over the remaining state-law claims in their Second Amended Complaint. Plaintiffs ask the court to retain supplemental jurisdiction because of the likelihood that Illinois procedural law will prevent them from re-filing those claims in state court. Defendants oppose this request and move to dismiss. For the reasons explained below, Defendants' motion is granted.

## **BACKGROUND**

The factual allegations in Plaintiffs' Second Amended Complaint are detailed in this court's previous opinion dismissing their RICO claim. *See Foster v. Local Union 8A-28A*, No. 16 C 4174, 2017 WL 4150683 (N.D. Ill. Sept. 18, 2017). The court presumes readers' familiarity with that opinion and provides only a brief summary of the relevant allegations here.

Plaintiffs Laura and William ("Bill") Foster began working as painters for the Chicago Transit Authority (CTA) in the early 1980s. Defendant Local 8A represents CTA's painters and refinishers in collective bargaining; the union is affiliated with Defendants International Union of Painters and Allied Trades (IUPAT) and Painters' District Council #14. In 2000, Laura Foster took a leave of absence from her position with the CTA to work full-time as a representative for Local

---

[1] The Fosters have initiated or participated in a sprawling web of litigation and administrative proceedings, at both the state and federal levels. *See, e.g.*, *Local 8A-28A v. Chicago Transit Authority*, No. L-CA-09-024, 2009 WL 8154296 (Ill. Labor Rel. Bd., Local Panel Sept. 4, 2009); *International Union of Painters and Allied Trades v. Local 8A-28A*, No. 09-CV-04358, 2010 WL 3780366 (E.D.N.Y. 2010); *Foster v. Chicago Transit Authority*, No. L-CA-10-035, 2012 WL 11828710 (Ill. Labor Rel. Bd. Gen. Counsel June 12, 2012); *Foster v. Chicago Transit Authority*, No. L-CA-11-006, 2012 WL 3775937 (Ill. Labor Rel. Bd., Local Panel Aug. 8, 2012); *Foster v. Illinois Dep't of Employment Security*, 2013 IL App (1st) 123440-U (1st Dist. 2013); *Foster v. Chicago Transit Authority*, No. 14 C 4701, 2015 WL 5693527 (N.D. Ill. Sept. 28, 2015); *Foster v. Chicago Transit Authority*, No. 13 C 5942, 2017 WL 514183 (N.D. Ill. Feb. 8, 2017).

8A. Several years later, in 2007, she was elected Vice President of the union. Laura's employment with Local 8A was terminated, however, on July 17, 2008, after she and other unidentified union members brought internal charges to IUPAT accusing Local 8A's president, Hector Lopez, of corruption. Laura and Bill subsequently brought unidentified charges against the union to both the National Labor Relations Board and the Illinois Labor Relations Board. They also reported Lopez's wrongdoing to the United States Department of Labor, and Lopez eventually pleaded guilty to mail fraud, wire fraud, and filing false tax returns.

Laura returned to work at the CTA in September 2008, but she was demoted from the position she had held before taking leave to work for the union. At some point, unidentified individuals forced her to take a "disability pension." She and Bill characterize both of these actions as retaliation for their attempts to challenge corruption within Local 8A. Bill also faced retaliation when, in 2011, certain union officials began to make knowingly false statements about him to "CTA management." These (unidentified) statements resulted in Bill's termination from the CTA in January 2012, though Bill "fought" the termination and was reinstated the following year. Union officials continued to make false statements about Bill, which resulted in his being suspended from work, in January 2016, for three days.

In August 2013, Bill Foster filed suit *pro se* in this court, alleging that Local 8A retaliated against him because he complained about, among other things, sex discrimination against Laura. *See Foster v. Local Union 8A-28A*, No. 13 C 5943 (filed Aug. 20, 2013). Laura joined the suit as a plaintiff in December 2013, when she and Bill filed a 232-page, 1483-paragraph amended complaint, alleging 72 separate counts under a variety of state and federal laws. For reasons that remain unclear, they filed two more amended complaints (now with the assistance of counsel), voluntarily dismissed the action in April 2015, and then re-filed it *pro se* almost exactly one year later. In November 2016, the Fosters filed a Second Amended Complaint in which they abandoned their discrimination claims in favor of a RICO theory (which has since been dismissed) as well as various Illinois state law claims. As previously noted, the issue now is whether the

3

court should retain supplemental jurisdiction over these state claims, as Plaintiffs request, or dismiss them.

## DISCUSSION

**I.      Supplemental jurisdiction**

28 U.S.C. § 1367(a) gives this court supplemental jurisdiction to hear all claims that "form part of the same case or controversy" as claims within the court's original jurisdiction—such as the RICO claims the court has now dismissed. Exercise of supplemental jurisdiction over related state-law claims makes sense when federal claims proceed, but "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prod. No. Am, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). The Seventh Circuit has identified a limited number of "circumstances that may displace the presumption," including: (1) where "the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court"; (2) where "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; and (3) when it is absolutely clear how the pendent claims can be decided." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012).[2]

This court previously explained that it would relinquish jurisdiction over the remaining claims in the Second Amended Complaint unless Plaintiffs established that doing so would "result in dismissal of otherwise-timely state law claims." *Foster*, 2017 WL 4150683, at *7. Plaintiffs now argue that their remaining state claims are likely to be dismissed, pursuant to 735 ILCS 5/13-217, if re-filed in state court. That statute permits only a single re-filing of claims that were voluntarily dismissed in a prior action. *See Timberlake v. Illini Hosp.*, 175 Ill. 2d 159, 676 N.E.2d 634 (1997).

---

[2]      The first of the Seventh Circuit's three exceptional circumstances is likely no longer relevant, as amendments to Section 1367 now require state courts to treat any applicable limitations clock as paused while a re-filed matter was pending in federal court. *See Artis v. District of Columbia*, 138 S. Ct. 594 (2018).

4

It applies to actions that were originally filed in federal court as well as those originally filed in state court. *See Gendek v. Jehangir*, 119 Ill. 2d 338, 518 N.E.2d 1051 (1988) (applying single re-filing rule to claim twice filed in federal court before being dismissed for lack of subject-matter jurisdiction). Noting that they voluntarily dismissed their previous federal action against Local 8A, Plaintiffs contend that Section 13-217 will likely deprive them of any forum at all if this court relinquishes jurisdiction a second time.

Defendants do not dispute that the single-refiling rule is likely to prevent Plaintiffs' claims from being heard by an Illinois court. Instead, they argue that this result is fair and reasonable, since Plaintiffs could have re-filed their previously dismissed claims in state court but simply chose not to. Defendants also note that at least one court in this district has held that "the Illinois single re-filing rule cannot force a federal court to retain supplemental jurisdiction over state law claims" after all federal claims have been dismissed. *Guaranteed Rate, Inc. v. Warren Barr*, No. 12 C 5362, 2013 WL 2452293, at *5 (N.D. Ill. June 5, 2013) (Kendall, J.). Holding otherwise, the *Guaranteed Rate* court warned, would allow parties to circumvent the limits on federal courts' diversity jurisdiction by (1) filing a federal complaint that alleges both state and federal claims; (2) voluntarily dismissing that complaint; (3) re-filing the state claims in another federal complaint alongside "a tentative but colorable federal claim"; and then (4) demanding, once this "tentative" federal claim is dismissed, that the court retain supplemental jurisdiction, lest the plaintiff be deprived of a forum to hear its state claims. *Id.* at *6.

While this court agrees that the Illinois single-re-filing rule does not require a federal court to retain supplemental jurisdiction, it does not agree that the risk identified in *Guaranteed Rate* is sufficient, in the absence of egregious forum-shopping by a sophisticated plaintiff, to justify depriving a party of any forum to litigate his or her claims. At least one other court in this district has retained jurisdiction under procedural circumstances similar to the ones before this court. *See Holdt v. A-1 Tool*, No. 04 C 4123, 2010 WL 3034761, at *1 (N.D. Ill. Aug. 3, 2010) (Manning, J.) (exercising supplemental jurisdiction because of the "strong likelihood" that the Illinois single

5

re-filing rule would deprive the plaintiff of a forum). This court will retain supplemental jurisdiction over the state-law claims of the Plaintiffs in this case—who were *pro se* at the time they re-filed their claims in federal court—due to the substantial likelihood that they would otherwise be deprived of any forum to hear those claims.

## II.   State claims

In addition to the now-dismissed RICO claim, the Second Amended Complaint includes thirteen state-law claims, alleging, *inter alia*, violations of the Illinois Whistleblower Act; conversion; negligence; breach of contract, fiduciary duty, and the duty of fair representation; tortious interference with prospective economic advantage; and intentional infliction of emotional distress. (*See* SAC ¶¶ 126-208.) Plaintiffs concede (*see* Pl.'s Resp. Br. 4, 9) that all but four of these thirteen claims were either time-barred when they filed their original federal suit against the union on August 20, 2013, or else are barred by the so-called "*Moorman* doctrine," which generally precludes tort liability for purely economic losses. *See Moorman Mfg. Co. v., Nat'l Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982). The court considers Plaintiffs' remaining claims in turn. In doing so, it accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiffs' favor. *See Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

### a.   Tortious interference, intentional infliction of emotional distress, and unfair representation

In counts V and VIII of the Second Amended Complaint, Bill Foster alleges that that Defendants and/or their agents tortiously interfered with his employment, and intentionally inflicted emotional distress, by knowingly making false statements to "CTA management" that resulted in his termination on January 26, 2012. (*See* SAC ¶¶ 107-109, 147-52; Pl.'s Resp. Br. 9.) Bill apparently "fought the termination"—presumably through arbitration, though Plaintiffs do not specify the precise mechanism—and "was reinstated to his position on October 31, 2013." (SAC ¶ 109.) But Defendants and/or their agents continued to knowingly make "false statements," which caused the CTA to suspend Bill from work for three days in late January 2016. (*Id.* at ¶¶

6

110-11.) In count XII, Bill alleges that Defendant Rinehart, a representative of Defendant Painter's District Local 14, "threatened to sabotage" Bill's grievance relating to his suspension if Bill refused to join that union.[3] (*Id.* at ¶¶ 112, 197.) This amounts to an ongoing breach of the union's duty of fair representation, Bill argues. (Pl.'s Resp. Br. 9.)

Plaintiffs do not provide any details about what Defendants and/or their agents said to "CTA management" about Bill Foster, or when they said it. In the post-*Twombly*/*Iqbal* era, this absence undermines Bill's claims for tortious interference and intentional infliction of emotional distress. *Cf. Forza Technologies, LLC v. Premier Research Labs, LLC*, 2015 IL App (1st) 142640-U, ¶ 22 (conclusory allegations of tortious interference are insufficient under Illinois pleading standards); *Bedin v. Northwestern Hospital*, 2017 IL App (1st) 151547-U, ¶ 31 (citing *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 43; *McCaskill v. Baker*, 92 Ill. App. 3d 157, 158, 414 N.E.2d 1327, 1328 (4th Dist. 1980) (complaint for IIED must be specific and detailed). Even if Plaintiffs had provided greater detail in support of these claims, Illinois law grants the Illinois Labor Relations Board exclusive jurisdiction not only over public employees' claims of unfair union representation, but also over closely related tort claims. *See Cessna v. City of Danville*, 296 Ill. App. 3d 156, 163-64, 693 N.E.2d 1264, 1269-69 (4th Dist. 1998) (ILRB had exclusive jurisdiction to hear conspiracy-to-defraud claim against international union premised on same facts as duty-of-fair-representation claim against its local affiliate). Bill's claims in counts V, VIII, and XII are therefore dismissed.

### b. Breach of contract

In count XIV of the Second Amended Complaint, Laura Foster alleges that the three union Defendants breached her employment contract with Local 8A by failing to make weekly contributions to Laura's pension and/or 401(k) plans. (SAC ¶¶ 203-08.) The purported contract is evidenced by a letter, dated October 16, 2000 and signed by Local 8A's president. This letter

---

[3] The court presumes, though Plaintiffs do not specifically allege, that at some point Local 14 superseded Local 8A-28A as the exclusive representative of Bill's bargaining unit.

7

lists certain benefits Laura was to receive as part of her employment for the union. Of the listed benefits, the only references to pension or 401(k) benefits are: "5. Pension: an IUPAT Pension contributions based on 50 hours per week[,]" and "6. Pension: Local Union 8A-28A Pension/401K contributions based on the rate of 7% of gross earnings or any combination of pension payments that would equal 7%." (Ex. B to SAC.)

Plaintiffs attempt to amplify this in their response brief, which offer several additional allegations relating to pension and/or 401(k) benefits, none of which are referenced in the October 16 letter itself. "The local normally contributes 7% of the representative's salary into a 401K pension plan," Plaintiffs assert, but "because Laura left the CTA on a leave of absence" to work for the union, "she opted to continue to maintain her CTA benefits." (Pl.'s Resp. Br. 4.) According to Plaintiffs, "Local 8A-28A agreed with Laura to pay the CTA's required 3% contribution in order to continue those benefits, leaving 4% to be allocated to Laura's Local 8A-28A 401K plan." (*Id.*) "These payments, or most of them, have not been paid into her 401K plan for most of the years that she was employed at the local union," Plaintiffs continue. As they see things, the Union's alleged failure to make these payments constitutes a breach of the contract evidenced by the October 16 letter. (*Id.*)

Defendants deny that the parties entered into a contract in the first place. They characterize the October 16 letter as an offer that Laura rejected but whose terms she proposed as part of a counter-offer on October 17. To support this characterization, they point to handwritten text at the bottom of the letter, which includes what appears to be Laura's signature, dated October 17, 2000, and the following text: "+ min. 4% raise per year or CBA now whichever higher." (*Id.*) Though they are less than explicit, Defendants imply that they rejected this counter-offer. (*See* Def.'s Reply Br. [108], at 4-5.)

To the extent there is no written agreement, Defendants argue that Laura's breach-of-contract claim is barred by the statute of limitations. Illinois law provides a ten-year statute of limitations for "actions on . . . written contracts," 735 ILCS 5/13-206, but only a five-year statute

of limitations for "actions on unwritten contracts," 735 ILCS 5/13-205. The Illinois Supreme Court has held that contracts whose existence or essential terms "must be proven by parol evidence" are "deemed oral" for purposes of the statute of limitations. *Armstrong v. Guigler*, 174 Ill. 2d 281, 287, 673 N.E.2d 290, 294 (1996).[4] Even if a portion of the alleged agreement in this case is in writing, Defendants urge, it is subject to the five-year limitations period, because parol evidence would be required to prove both the existence of the contract and the meaning of the terms relating to retirement benefits. Defendants then reason that the date of Laura's termination by Local 8A—July 17, 2008—is the latest possible date when any of the Defendants could have breached the alleged contract by failing to contribute to Laura's pension. As a result, the five-year limitations period expired on July 17, 2013—more than a month before the Fosters filed the federal complaint they subsequently withdrew, and more than three years before they filed the Second Amended Complaint containing Laura's breach of contract claim.

Plaintiffs offer no response to Defendants' invocation of *Armstrong* as a basis for applying the five-year limitations period in section 13-205. Nor do Plaintiffs allege that Laura did not discover, or could not have discovered, the alleged breach until a time within the statutory period.[5] They simply assume that the October 16 letter is a fully integrated contract, and that the ten-year limitations period in section 13-206 applies.

---

[4] As used in Illinois law, the term "parol evidence" refers to evidence, other than the text of a written agreement itself, that relates to "a prior or contemporaneous agreement" between the parties. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005).

[5] "Where it appears from the face of the complaint that the plaintiff is filing an action beyond the period for the statute of limitations, the plaintiff must allege facts which indicate that the cause of action was not discovered or would not have been discovered through the exercise of due diligence." *Waters v. Reingold*, 278 Ill. App. 3d 647, 660, 663 N.E.2d 126, 136 (1st Dist. 1996), *abrogated on other grounds*, *Niccum v. Botti, Marnaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 694 N.E.2d 562 (1998). The Fosters allege only that Defendants "conceal[ed] . . . the facts alleged herein" by "intentionally steering the plaintiffs to incorrect—and potentially corrupt—forums in order to lull them into a false sense of security (that action was being taken on their claims)[.]" (SAC ¶ 115.) This vague allegation is not enough for Plaintiffs to avail themselves of the discovery rule. *See Waters*, 278 Ill. App. 3d at 661, 663 N.E.2d. at 137 ("nebulous allegation" that plaintiff did not discover alleged breach until receiving vague notification from government agency was "not enough to meet the discovery rule").

9

The court disagrees. The parties clearly did not intend for the October 16 letter to stand on its own, as it lacks definitions of essential terms such as "IUPAT Pension" and "Local Union 8A-28A Pension." *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005) (admissibility of parol evidence under Illinois law turns on whether written contract "is fully integrated, clear and unambiguous"). Plaintiffs implicitly acknowledge this: in their response brief, they themselves rely on parol evidence—that is, the alleged terms of another, contemporaneous agreement between the parties—to identify the specific obligation Defendants allegedly failed to perform. The court concludes that the five-year statute of limitations in 735 ILCS 5/13-205 is applicable here. Because it is clear from the pleadings that Laura did not file the claim in count XIV within the applicable limitations period, that claim is dismissed.

## **CONCLUSION**

Plaintiffs' federal claims have been dismissed, and the state law claims asserted in their Second Amended Complaint are time-barred. Therefore, Defendants' motion to dismiss [103] is granted. As Plaintiffs have had ample opportunities to re-plead, this dismissal is with prejudice. Judgment will enter in favor of Defendants.

ENTER:

Dated: September 17, 2018

_____
REBECCA R. PALLMEYER
United States District Judge

10